1

2

3

4

5

6

7

8

9

10

11

12

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MARK P. COUCH,

                              Plaintiff,

          v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security, [1]

                              Defendant.

Case No. 3:12-cv-05990-KLS

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

13

14

15

16

17

18

19

20

          Plaintiff has brought this matter for judicial review of defendant's denial of his

application for disability insurance benefits.  Pursuant to 28 U.S.C. § 636(c), Federal Rule of

Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard

by the undersigned Magistrate Judge.  After reviewing the parties' briefs and the remaining

record, the Court hereby finds for the reasons set forth below that defendant's decision to deny

benefits should be reversed and that this matter should be remanded for further administrative

proceedings.

21

                              FACTUAL AND PROCEDURAL HISTORY

22

23

24

25

          On September 10, 2009, plaintiff filed an application for disability insurance benefits,

alleging disability as of November 1, 2003, due to cervical dystonia, cervical radiculopathy and

depression. See ECF #13, Administrative Record ("AR") 20, 222.  That application was denied

26

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of the Social Security
Administration.  Therefore, under Federal Rule of Civil Procedure 25(d)(1), Carolyn W. Colvin is substituted for
Commissioner Michael J. Astrue as the Defendant in this suit.  **The Clerk of Court is directed to update the
docket accordingly.**

ORDER - 1

upon initial administrative review on January 22, 2010, and on reconsideration on May 21, 2010. See AR 20. A hearing was held before an administrative law judge ("ALJ") on July 13, 2011, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See AR 37-62.

In a decision dated August 9, 2011, the ALJ determined plaintiff to be not disabled. See AR 20-31. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on September 10, 2012, making the ALJ's decision the final decision of the Commissioner of Social Security (the "Commissioner"). See AR 1; see also 20 C.F.R. § 404.981. On November 28, 2012, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. See ECF #4. The administrative record was filed with the Court on February 28, 2013. See ECF #13. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the ALJ's decision should be reversed and remanded for an award of benefits because the ALJ erred: (1) in evaluating the opinion evidence from Alida Griffith, M.D., Gary Gaffield, D.O., Raymond West, M.D., Theodore J. Becker, Ph.D., RPT,  Robin Garcia, PA-C, and Kent Shafer, M.Ed[2]; (2) in assessing plaintiff's residual functional capacity; and (3) in finding him to be capable of performing other jobs existing in significant numbers in the national economy. For the reasons set forth below, the Court agrees the ALJ erred in evaluating the opinion evidence from Dr. Gaffield, Dr. Becker and Mr. Shafer, and thus in assessing plaintiff's

---

[2] Plaintiff also indicates he is asserting the ALJ erred in evaluating the opinion evidence from James K. Sheffield, M.D. See ECF #18, p. 12. But because plaintiff offers no specific argument in regard to the ALJ's evaluation of Dr. Sheffield's opinion in his opening brief, the Court declines to find any error with respect thereto. See Carmickle v. Commissioner of Social Sec. Admin., 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (issue not argued with specificity in briefing will not be addressed); Paladin Associates., Inc. v. Montana Power Co., 328 F.3d 1145, 1164 (9th Cir. 2003) (by failing to make argument in opening brief, objection to district court's grant of summary judgment was waived); Kim v. Kang, 154 F.3d 996, 1000 (9th Cir.1998) (matters not specifically and distinctly argued in opening brief ordinarily will not be considered).

ORDER - 2

residual functional capacity, in finding him to be capable of performing other jobs existing in significant numbers in the national economy, and in determining him to be not disabled. Also for the reasons set forth below, however, the Court finds that while defendant's decision should be reversed on that basis, this matter should be remanded for further administrative proceedings.

<u>DISCUSSION</u>

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. <u>Hoffman v. Heckler</u>, 785 F.2d 1423, 1425 (9th Cir. 1986); <u>see also</u> <u>Batson v. Commissioner of Social Security Admin.</u>, 359 F.3d 1190, 1193 (9th Cir. 2004); <u>Carr v. Sullivan</u>, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing <u>Brawner v. Secretary of Health and Human Services</u>, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (citation omitted); <u>see also</u> <u>Batson</u>, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. <u>Allen v. Heckler</u>, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting

ORDER - 3

Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)). [3]

I.      The ALJ's Evaluation of Dr. Gaffield's Opinion

        The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

        In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

---

[3] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

Sorenson, 514 F.2d at 1119 n.10.

ORDER - 4

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

The record contains an evaluation report completed by Dr. Gaffield in late April 2007, in which Dr. Gaffield opined in relevant part:

> . . . In view of the tremor and obvious dystonia, I would expect this claimant to walk or stand less than six hours during an eight-hour day, not as a result of the dystonia, but the fatigue induced by this condition.

ORDER - 5

Similarly, I would expect this claimant to sit for less than six hours during an eight-hour day due to the extreme fatigue and back spasms and cervical discomfort generated by this disease.

He would be advised to carry less than 10 pounds occasionally and 10 pounds frequently due to his history of uncontrolled balance and severe tremors with increased load.

Postural activities of bending, stooping, and crouching limited to an occasional basis due to his balance disorder.

Manipulative activities involving his upper extremities are limited to an occasional basis due to his bilateral hand tremors.

Workplace environment would not require special modifications or needs.

AR 445-46. The ALJ stated he was assigning "little weight" to Dr. Gaffield's opinion, because "[h]e only reviewed one medical report and [plaintiff] subsequently reported he could still lift 30 pounds." AR 28. The Court agrees with plaintiff that these are not valid reasons for rejecting the opinion of Dr. Gaffield.

First, given that it appears Dr. Gaffield based his opinion primarily, if not solely, on his own examination findings (see AR 441-46) – and that there is no requirement that an examining physician rely on the medical reports of others before giving his or her own opinion – it is not at all clear how the absence of greater medical record review calls into question the credibility of Dr. Gaffield's opinion, particularly as the ALJ fails to state which other records call into doubt the credibility of that opinion and how they do so. Second, as plaintiff points out, while he did report being able to "lift 30 pounds and carry them from one room to another," that report gives no indication as to the amount of weight he believed he could carry on an occasional or frequent basis as opposed to merely on a one-time basis. AR 449. Dr. Gaffield, though, assessed plaintiff based on how much he can carry on both an occasional and frequent basis. See AR 449. Further, Dr. Gaffield gave no opinion as to the amount of weight plaintiff could lift. See id. As these are

1   the only reasons the ALJ gave for rejecting Dr. Gaffield's entire opinion, he erred.

2   II.     The ALJ's Evaluation of the Opinions of Dr. Becker and Mr. Shafer

3       Also in terms of the opinion evidence in the record, plaintiff challenges the following

4 findings made by the ALJ:

> On July 31, 2006, Theodore Becker, M.D., performed a physical capacity
> evaluation. Dr. Becker opined that the claimant could sit for five hours, stand
> for three hours, and walk for two hours in an eight-hour day. He opined that
> the claimant could alternatively sit, stand and walk for five hours in an eight-
> hour day. Dr. Becker opined that the claimant could occasionally lift 8.5
> pounds from floor to waist, waist to shoulder, and shoulder to overhead. He
> opined that the claimant could occasionally carry 11.5 pounds for 100 feet.
> Dr. Becker opined that the claimant could occasionally squat, kneel, and reach
> overhead with the left upper extremity. He opined that the claimant should
> seldom reach overhead with the right upper extremity or climb stairs and
> ladders. Dr. Becker reported the claimant's abilities to bend, stoop, crouch
> and operate foot controls were within normal limits. He reported the
> claimant's motor control biomechanics showed dysfunction barrier disrupting
> all work functions (Exhibit 8Fp7). Dr. Becker opined that the claimant did
> not have the ability, biomechanically, to undertake functions for body postures
> /positions required for work applications (Exhibit 13Fp2). I assign less weight
> to the opinion of Dr. Becker. He did not review any of the claimant's medical
> records and more recently the claimant reported he could lift 30 pounds. I
> note Dr. Becker reported the claimant's fine motor skills were intact for
> industrial, manufacturing and commercial work applications, which supports
> my conclusion that the claimant could perform occasional fingering.

AR 28. Again, the Court agrees the ALJ's stated reasons for rejecting this opinion evidence to

be legally insufficient. Defendant argues the ALJ only was required to give germane reasons for

rejecting it, because Dr. Becker has the credentials of a registered physical therapist and because

his functional assessment is contained in a "Therapist Summary" form.[4] AR 424. Whether or not

Dr. Becker should be treated as a physical therapist here, none of the ALJ's reasons for rejecting

his assessment are germane or legitimate.

---

[4] As a physical therapist Dr. Becker's assessment would be treated as coming from an "other source" as opposed to
from an "acceptable medical source," and thus as lay witness testimony the ALJ "must take into account," unless he
or she "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so."
Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001); 20 C.F.R. § 404.1513(a), (d).

First, as discussed above with regard to Dr. Gaffield's opinion, the fact that Dr. Becker did not review any medical records is insufficient given that he relied solely on his own clinical findings in assessing plaintiff's functional capacities, as is plaintiff's report of being able to lift 30 pounds given that Dr. Becker opined as to his ability to lift and carry on an occasional and frequent basis. See AR 424, 459-80. Second, although it may be Dr. Becker's finding that plaintiff had intact fine motor skills is consistent with the ALJ's determination that he can perform fingering on an occasional basis (see AR 24, 424, 474), that consistency fails to account for the other functional limitations Dr. Becker assessed.

The record also contains a vocational evaluation report from Mr. Shafer, who opined in relevant part therein that:

> Based on the Performance-Based Physical Capacities Evaluation by Theodore
> Becker, Ph.D., Mr. Couch ". . . should be considered work intolerant." Dr.
> Becker indicates that Mr. Couch does not have ". . . the ability to
> biomechanically undertake functions for body posture/positions that are
> required for work applications." Dr. Becker's opinion is supported by my
> own observations of Mr. Couch during the interview and testing. Based on
> Dr. Becker's evaluation, combined with my observations of Mr. Couch, I can
> think of no form of work that would accommodate the level of dysfunction
> that Mr. Couch demonstrates. In my opinion, he is unemployable absent
> additional medical treatment that would significantly improve his situation.

AR 422. The ALJ stated he was assigning "little weight" to this opinion because it "was largely based on the physical capacities evaluation completed by Dr. Becker." AR 29. Here too, the Court agrees with plaintiff that the ALJ erred. As discussed above, the ALJ failed to give valid reasons for rejecting Dr. Becker's evaluation. In addition, Mr. Shafer stated his reliance on that evaluation was supported by his own observations of plaintiff, which included his observations of plaintiff's "very noticeable" and "very obvious head tremor." AR 419-20. The ALJ's findings here therefore cannot be upheld.

ORDER - 8

III.    The ALJ's Assessment of Plaintiff's Residual Functional Capacity

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520.  If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id.  If a disability determination "cannot be made on the basis of medical factors alone at step three of that process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2.  A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id.

Residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id.  It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id.  However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id.  Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id.  In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

The ALJ in this case found plaintiff had the residual functional capacity to perform light work, except that he could not reach overhead and could perform fingering on only an occasional basis. See AR 24.  But because the ALJ erred in evaluating the opinion evidence in the record from Dr. Gaffield, Dr. Becker and Mr. Shafer as discussed above, the Court agrees with plaintiff

1  that it cannot be said at this time that the ALJ's RFC assessment accurately describes all of

2  plaintiff's functional limitations.

3  IV.    The ALJ's Step Five Determination

4          If a claimant cannot perform his or her past relevant work, at step five of the disability

5  evaluation process the ALJ must show there are a significant number of jobs in the national

6  economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir.

7  1999); 20 C.F.R. § 404.1520(d), (e).  The ALJ can do this through the testimony of a vocational

8  expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). Tackett, 180

9  F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

10

11          An ALJ's findings will be upheld if the weight of the medical evidence supports the

12  hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987);

13  Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984).  The vocational expert's testimony

14  therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See

15  Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).  Accordingly, the ALJ's description of the

16  claimant's disability "must be accurate, detailed, and supported by the medical record." Id.

17  (citations omitted).  The ALJ, however, may omit from that description those limitations he or

18  she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

19

20          At the hearing, the ALJ posed a hypothetical question to the vocational expert containing

21  substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual

22  functional capacity. See AR 57-58.  In response to that question, the vocational expert testified

23  that an individual with those limitations – and with the same age, education and work experience

24  as plaintiff – would be able to perform other jobs. See AR 58-59.  Based on the testimony of the

25  vocational expert, the ALJ found plaintiff would be capable of performing other jobs existing in

26

ORDER - 10

significant numbers in the national economy. <u>See</u> AR 29-30.  But because as discussed above it cannot be said at this time that the ALJ's RFC assessment accurately describes all of plaintiff's functional limitations, it also is far from clear that the ALJ's step five determination is supported by substantial evidence.

The Court rejects, however, plaintiff's assertion that he should be found disabled at this step at this time.  While it is true that Dr. Becker and Mr. Shafer both concluded that plaintiff would not be able to work, other opinion evidence in the record contradicts those conclusions. <u>See</u> AR 452, 496-503, 539.  In addition, the record does not support plaintiff's further assertion that Dr. Gaffield had limited him to sitting, standing and walking for less than six hours in an eight-hour day, thereby establishing plaintiff was unable to work on a regular and continuing basis.  Dr. Gaffield did not opine that plaintiff could do those activities for a *combined* total of less than six hours.  Rather, Dr. Gaffield found he could only stand *or* walk for less than six hours *and* sit for less than six hours in an eight-hour workday, indicating a combination of the three could be performed for the full workday. <u>See</u> AR 445.

The same is true with respect to the sitting, standing and walking limitations assessed by Raymond West, M.D., in late May 2008. <u>See</u> 452 (finding plaintiff could "stand and walk for four hours cumulatively in an eight-hour day" and "sit for 4-5 hours cumulatively in an eight-hour day").  Nor does the record necessarily support a limitation to sedentary work or to lifting at most 10 pounds as argued by plaintiff, or even if it does that the ALJ would be required to find plaintiff to be disabled on that basis.[5] <u>See</u> AR 445, 452, 497.  Given that it is *not* at all clear that

---

[5] Plaintiff cites <u>Benecke v. Barnhart</u>, 379 F.3d 587 (9th Cir. 2004), in arguing that "[a] limitation to sedentary work, coupled with the other limitations the ALJ assessed, would mandate a finding that [he] was disabled." ECF #18, p. 22.  But the facts of <u>Benecke</u> are substantially dissimilar to those of this case. <u>See id.</u> at 595 (finding "the record, including the limited vocational expert testimony, *clearly* establishes that [the claimant] cannot perform a sedentary job or any other substantial gainful work that exists in the national economy") (emphasis added).

plaintiff is limited to no more than sedentary work, furthermore, the Court declines to find a

determination of disability based on a limitation to such work and only occasional fingering as

found by the ALJ should result in a finding of disability at step five.

V.     This Matter Should Be Remanded for Further Administrative Proceedings

        The Court may remand this case "either for additional evidence and findings or to award

benefits." Smolen, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the

proper course, except in rare circumstances, is to remand to the agency for additional

investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations

omitted).  Thus, it is "the unusual case in which it is clear from the record that the claimant is

unable to perform gainful employment in the national economy," that "remand for an immediate

award of benefits is appropriate." Id.

        Benefits may be awarded where "the record has been fully developed" and "further

administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan

v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded

where:

        (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the
        claimant's] evidence, (2) there are no outstanding issues that must be resolved
        before a determination of disability can be made, and (3) it is clear from the
        record that the ALJ would be required to find the claimant disabled were such
        evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002).

Because issues still remain in regard to the opinion evidence in the record concerning plaintiff's

physical functional limitations, his residual functional capacity and his ability to perform other

jobs existing in significant numbers in the national economy, remand for further administrative

proceedings is warranted.

ORDER - 12

CONCLUSION

Based on the foregoing discussion, the Court hereby finds the ALJ improperly concluded plaintiff was not disabled.  Accordingly, defendant's decision to deny benefits is REVERSED and this matter is REMANDED for further administrative proceedings in accordance with the findings contained herein.

DATED this 22nd day of November, 2013.

Karen L. Strombom
United States Magistrate Judge

ORDER - 13